UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

KRISTEN MEGHAN KELLY,

    Plaintiff,

vs.

THE DAILY BEAST COMPANY LLC, LARRISON CAMPBELL, AND THE AMERICAN INDUSTRIAL HYGIENE ASSOCIATION,

    Defendants.

Case No. 1:22-cv-00482

Hon. Hala Y. Jarbou

**ORAL ARGUMENT REQUESTED**

/

**REPLY BRIEF OF DEFENDANTS THE DAILY BEAST AND LARRISON CAMPBELL IN SUPPORT OF MOTION TO DISMISS**
**ORAL ARGUMENT REQUESTED**

**I.    INTRODUCTION**

In their Motion to Dismiss (ECF No. 7, hereinafter the "Motion"), Defendants The Daily Beast and Larrison Campbell (together "The Daily Beast") methodically demonstrate that Plaintiff has failed to state a claim based on the Article. The Motion systematically shows that Plaintiff's claims as to each and every one of the statements at issue lack merit, and that most, if not all, of these statements are non-actionable for multiple reasons.[1]

Unfortunately, Plaintiff's Response departs from the orderly sequencing of arguments reflected in the Motion. This makes the Response hard to follow, and at some points it is difficult to tell which argument the Response is trying to address.

The Response compounds this problem by consistently getting the law wrong. It blends

---

[1] The Response criticizes Defendants for "parsing" the "allegations of the complaint into distinct, separate statements." Response at 12. The criticism is puzzling given that a defamation claim must be based upon a "statement," and identifying and analyzing the individual statements at issue is exactly what courts do when defendants file dispositive motions in these cases. *See, e.g.*, *Ireland v. Edwards*, 584 N.W.2d 632 (1998).

1

44533188.3

together distinct elements of a defamation claim. It highlights doctrines that have no bearing on the outcome of this Motion. It relies on cases that aren't relevant. It inaccurately describes cases that are.

Perhaps this disarray reflects a strategic choice. Maybe Plaintiff believes that sowing confusion will save her case. It won't.

In this Reply Brief, and in an effort to assist the Court in the orderly disposition of this meritless case, The Daily Beast returns to the structure and sequence of arguments as set forth in the Motion to Dismiss. Doing so confirms that Plaintiff has failed to state a claim and that the Response does not offer a single persuasive argument to the contrary. Accordingly, The Daily Beast respectfully asks this Court to grant the Motion.

## II. ARGUMENT

### A. **Kelly Concedes Two Foundational Arguments**

The Motion to Dismiss begins by advancing two foundational arguments: First, courts have recognized that early dismissal plays an important role in cases involving speech on matters of public interest. Second, under *Twombly* and *Iqbal* the Complaint must plead a plausible claim based on specific allegations of fact and not the recitation of mere legal conclusions. (*See* Motion to Dismiss sections IV(A) and IV(B).) Plaintiff does not argue otherwise or cite opposing authority and so has conceded these arguments. *See Knowles v. Iowa*, 525 U.S. 113, 116 n.2 (1998) (noting that party waived argument by failing to raise it in opposition to petition for certiorari); *Lee Contracting, Inc. v. Shore Western Mfg.*, No. 1:19-cv-831, 2020 WL 6193628, at *3 n.4 (W.D. Mich. Oct. 22, 2020) (finding plaintiff had waived argument by failing to raise it in response to

motion to dismiss).[2]

B.     **The Daily Beast Did Not Publish Most of the Statements**

The third argument in the Motion to Dismiss is that the Article does not even include five of the nine "statements" about which Plaintiff complains. This is a serious matter that Plaintiff ought to have confronted head on. The confusing structure of Plaintiff's brief, however, makes it unclear whether she has even attempted to respond.

It appears that she may be trying to answer the argument by invoking the doctrine of defamation by implication. (*See* Response, ECF No. 12 at PageID.412.) This doctrine permits some libel plaintiffs under certain limited circumstances to argue that they were defamed by the false implication of a set of statements. *See Locricchio v. Evening News Association*, 476 N.W.2d 112 (Mich. 1991). *Locricchio*, for example, involved a claim that a series of Detroit News articles falsely implied the plaintiffs had connections with organized crime. There, the trial court found the plaintiffs had failed to prove any facts or implication false, and the Michigan Supreme Court agreed.

Kelly does not pinpoint the "false implication" that she claims flows from the Article. Instead, she just repeatedly says that the Article will make people in her profession think less of her. (*See* Response, ECF No. 12 at PageID.412-419.) Kelly here conflates the distinct doctrines of libel by implication and libel per se, resulting in an incomprehensible mashup of defamation principles.

In any event, the doctrine of libel by implication does not help Plaintiff's case. First, the Article only "implies" the same thing it expressly says: A public controversy exists around

---

[2] It should also be noted that Plaintiff does not take issue with the summary of the Article offered in the Statement of Facts of the Motion to Dismiss.

3

masking and around those who advocate against it. That statement—whether made directly or by implication—is undoubtedly true.

Second, as a matter of simple logic an article cannot be said to imply something if it includes express statements that contradict the alleged implication. Although Plaintiff does not commit to a precise implication that she claims flows from the Article, at one point she appears to argue that it implies she is incompetent in her profession. (*See* Response, ECF No. 12 at PageID.415-416.) But this ignores much of what the Article says about her.

As detailed in the Motion to Dismiss, the Article takes pains to discuss Plaintiff's scientific background, work history, Air Force veteran status, credibility, and charisma. It quotes the legislators who have applauded her work. It describes her effectiveness in shaping policy. Plaintiff's defamation by implication argument is thus self-contradictory and incoherent: At the same time, she both urges this Court to consider the entire Article (*see* Response, ECF No. 12 at PageID411-413) and asks the Court to ignore everything in it that depicts her favorably and tells her side of the story.

At another point, Plaintiff appears to shift theories and argue that the Article implies she committed perjury. Plaintiff admits, as she must, that the Article says no such thing. (*See* Response, ECF No. 12 at PageID.419.) But she argues that this accusation is the "gist" or "sting" of the Article. (*Id.*)

Plaintiff here again conflates two distinct legal doctrines: the doctrine of libel by implication and the doctrine of substantial falsity. More importantly, though, Plaintiff's argument ignores what the Article does and does not say. Far from accusing her of a knowing misrepresentation, the Article simply reports that her affidavit was withdrawn and provides the

4

various explanations offered for why this happened, including Plaintiff's own.[3]

The opinion of Judge Edmunds in *Hazime v. Fox TV Stations, Inc.*, No. 12-15072, 2013 WL 443485 (E.D. Mich. Aug. 19, 2013), provides useful insights on these points. In that case, the owner of a store that sold refurbished mattresses sued a television station that had reported some of the mattresses were infested with bedbugs. Among other things, the plaintiff claimed that the broadcast created the false implication that selling refurbished mattresses was against the law. The court pointed out that the broadcast could not have done so because the reporter *had acknowledged* that the business was legal. *Id.* at *10. Similarly, here, as a matter of law the Article cannot create the implication that Plaintiff is incompetent or committed perjury because it includes facts that *contradict* any such implication.

Furthermore, Judge Edmunds pointed out that the plaintiff in *Hazime*, like the plaintiffs in *Locricchio*, "want to have it both ways" in their defamation by implication claim: "[o]n the one hand, they want to assert that the [reports] as a whole disseminate false implications, while [o]n the other they point to statements or headlines in isolation from the whole." *Id.* at *13, citing and quoting *Locricchio*, 476 N.W.2d at 133. "Prevailing defamation law does not allow them to do this." *Hazime*, *supra* at *13. Plaintiff here pursues exactly the same improper strategy, hopping back and forth between theories—sometimes wrenching specific statements from their context, sometimes making broad accusations about what the Article supposedly implies despite what it actually says.

---

[3] Plaintiff's argument about her affidavit is puzzling in another respect. As the Article recounts, Plaintiff acknowledged to The Daily Beast that the affidavit contained errors. She insists, however, that she withdrew the affidavit only because it included personal information. It is therefore apparently Plaintiff's position that, if not for her privacy concerns, she would have let the false statements in the affidavit stand. This is a peculiar stance from someone who claims to be concerned about the appearance of perjury.

5

In sum, The Daily Beast simply did not make most of the statements of which Plaintiff complains. And the doctrine of defamation by implication, if it applies here at all, does not save her claims.

C.      **All of the Statements Are Expressions of Subjective Opinion**

In the Motion, The Daily Beast explains in detail why all of the statements of which Plaintiff complains are non-actionable as rhetorical hyperbole, figurative language, or subjective opinion. (*See* Motion § IV(D), ECF No. 7 at PageID.166-171.) Plaintiff's Response again confuses the issues.[4]

Plaintiff argues that "[e]ven if some of defendant's comments might in isolation amount only to opinions or rhetorical hyperbole, those statements within the full context of the article lowered Kelly's reputation within her professional community using fact-based statements which are provably false." (Response, ECF No. 12 at PageID.412-413.) This argument is twice wrong.

First, the argument is circular. The question at issue is whether the statements of which Plaintiff complains are (1) factual or (2) subjective opinion, rhetorical hyperbole, figurative language, and the like. In the Motion to Dismiss, The Daily Beast shows that under the relevant case law these statements plainly fall into the latter category. In her Response, Kelly argues that the statements are factual merely by assuming they are "fact based." Thus, for example, she labels the statement, "Experts in her field are losing it," as factual even though it is unmistakably a use of rhetorical hyperbole. (*See* Response. ECF No. 12 at PageID.413.) Furthermore, that an opinion

---

[4] Throughout the Response, Plaintiff makes a great deal of the fact that a lawyer cross-examining an expert at a deposition apparently confronted the witness with Sloan's "99%" statement as if it were hard data rather than a figure of speech. Whether this statement constitutes a figure of speech is a question for this Court to decide as a matter of law. *See, e.g.*, *Garvelink v. The Detroit News*, 522 N.W.2d 883, 886 (Mich. Ct. App. 1994) (holding "as a matter of law that the column cannot reasonably be interpreted as stating actual facts about plaintiff"). It is not to be decided by reference to questions asked by lawyers with litigation agendas in unrelated cases.

is based on facts does not make it any less an opinion, or any more of a factual statement. Indeed, opinions typically have at least some basis in fact.

Second, Plaintiff's argument again conflates two distinct issues within defamation law: (1) the protection afforded to subjective opinions, rhetorical hyperbole, and loose figurative language; and (2) the requirement that the plaintiff prove harm to reputation. Plaintiff here argues that even if the statements at issue were opinions it would not matter because they made people in her profession think less of her. But this reasoning is incorrect as a matter of law and of logic. For example, calling someone "Gravelhead" may prompt people to think less of that person, but it's undoubtedly a use of rhetorical hyperbole and so is constitutionally protected speech. *See Garvelink v. The Detroit News*, 522 N.W.2d 883, 886-88 (Mich. Ct. App. 1994).

Finally, Plaintiff argues that scientific propositions cannot be matters of opinion because they can be proven true or false. To make the point, Plaintiff resurrects Galileo and uses as an example the question of whether the Earth occupies the center of the universe. (*See* Response, ECF No. 12 at PageID.418.) This argument, however, does not withstand scrutiny because it treats all matters of scientific inquiry as having the same capacity to yield objective certainty, even though this is obviously not the case. Scientists routinely hold very different opinions about a vast range of issues, including the efficacy of masking, and the international debate that has unfolded on that issue over the past two years belies Plaintiff's claim that there can be a monopoly on the truth as to the issue. Unsurprisingly, Plaintiff cites no case supporting her argument here; in contrast, the case law cited by The Daily Beast wisely recognizes that scientific controversies do indeed exist and that courts are ill-equipped to referee them.

Plaintiff's entire case thus rests on statements that are non-actionable. It should be dismissed.

44533188.3

**D.     The Gist of the Article Is True**

As the Motion to Dismiss argues and Plaintiff concedes, a statement is not false under defamation law if the "gist" of it is true. (*See* Motion § IV(E), ECF No. 7 at PageID.171-172; Response, ECF No. 12 at PageID.419-420.) In other words, putting aside any technical factual inaccuracies, a statement is not actionable if the "sting" of what was said is identical to that which the literal truth would produce. The gist of the Article and of the statements of which Plaintiff complains is that many scientists disagree with her position and believe that it creates substantial public health risks. That is unquestionably true.

Plaintiff's allegations of falsity do not change the gist of the Article. For example, Plaintiff takes issue with Sloan's statement that "99%" of AIHA members disagree with her position. As the Motion to Dismiss demonstrates, this statement is non-actionable rhetorical hyperbole. But assuming (i) that Sloan's statement was not a figure of speech but is factual in nature and (ii) that a *literally* true statement would differ because it would say that "a majority" of members, or "many" members, or "79.5%" of members disagree with Plaintiff, the "gist" or "sting" of the Article would remain the same: Plaintiff's views have strong opposition in the scientific community and are perceived as creating significant health risks. Again, Plaintiff cannot contend that this gist is untrue; or, at least, she cannot do so consistent with Rule 11 of the Federal Rules of Civil Procedure.[5]

**E.     Plaintiff Has Not Adequately Pled Actual Malice**

   1.     Plaintiff Is a Limited Purpose Public Figure

The Motion to Dismiss explains why Kelly clearly qualifies as a limited purpose public

---

[5] Plaintiff argues that the gist of the Article is that she is incompetent in her profession, but that is plainly not the case. As discussed above, the Article includes numerous statements that are inconsistent with any such "gist."

figure under the law. In her Response, Plaintiff argues that this is not the case because issues around her qualifications, and around the withdrawal of the affidavit that she provided to an organization that advocates against COVID restrictions, are "ancillary" to the controversy. (*See* Response, ECF No. 12 at PageID.408.) This is obviously wrong. Kelly holds herself out as an expert on the efficacy of masking. A great deal of the COVID debate has centered on which experts on this issue the public should credit and which viewpoints the public should find persuasive. Kelly's qualifications and sworn statements are at the heart of the matter.

Kelly's argument is also plainly inconsistent with controlling Supreme Court precedent. In essence, Kelly maintains that for her to be a limited purpose public figure, the public controversy needs to be specifically about *her*. That argument has no basis in anything the Supreme Court has said.

In the foundational case of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Court explained the reasoning behind the category of limited purpose public figures. First, the Court noted, public figures enjoy greater access to "the channels of effective communication" and therefore "have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Id.* at 344. This consideration obviously applies to Kelly, who has more than 19,000 followers on Twitter, who the Complaint states has "appeared in documentaries" (Complaint, ECF No. 1-4 at PageID.71 ¶ 19), and who maintains such a high profile that political leaders in multiple states have sought her assistance.

Second—and, *Gertz* says, "more important[ly]"—limited purpose public figures "invite attention and comment" about themselves by voluntarily "thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345. This "more important" consideration applies to Kelly as well. As detailed in the

9

Motion to Dismiss, she has voluntarily thrust herself to the forefront of the masking controversy by (among other things) appearing before State legislatures in order to influence their policy decisions.

Nothing in the language, reasoning, or holding of *Gertz* supports the argument that someone qualifies as a limited purpose public figure only if the public controversy is specifically about her. Nor would this interpretation of *Gertz* make any sense. Such a standard would severely narrow the scope of protection for the discussion of public controversies, without any principled basis for the distinction between what is protected and what is not. Furthermore, Plaintiff's position cannot be squared with the rationale of *Gertz* itself, as it is hard to see how a plaintiff could "thrust herself" into a controversy that is *already* specifically about *her*.

It is therefore unsurprising that Plaintiff cites *no* case that supports her novel interpretation of the law. She cites only *Nehls v. Hillsdale College*, 178 F. Supp. 2d 771 (E.D. Mich. 2001), which held that an affair between a private college president and his daughter-in-law, and some disagreements about the college's teaching, did not create a "public controversy" under *Gertz*. Nothing in *Nehls* buttresses Plaintiff's reading of *Gertz*. And there of course is a substantial difference between a college president's affair and a pandemic that has killed over a million United States citizens.[6]

---

[6] Plaintiff also cites the *Hillsdale* case as endorsing a four-part inquiry into whether a defamation plaintiff injected herself into a public controversy. As the *Hillsdale* opinion recognizes, *Gertz* itself includes just two prongs: (1) a public controversy must exist, and (2) the nature and extent of the plaintiff's participation in the controversy must be ascertained. Transforming the second prong into a four-part test is not necessary and, depending on how a court applies the test, could prove inconsistent with *Gertz*. If this Court elects to apply that four-part test, however, Plaintiff clearly meets it: she successfully invited public attention to her views to influence others; she voluntarily injected herself into the controversy; she assumed a position of prominence in the controversy, shaping State law and policy; and she maintained regular access to the media throughout, including via her substantial following on Twitter.

Indeed, courts routinely consider the "public controversy" question in broad terms rather than in terms focused narrowly on the plaintiff. *See*, *e.g.*, *Jankovic v. Int'l Crisis Group*, 822 F.3d 576, 586 (D.C. Cir. 2016) ("The court has defined controversies as being broader than the narrower discussion contained in the defamatory document . . . ."); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 710 (4th Cir. 1991) (rejecting plaintiff's attempt to narrow the controversy to the alleged libelous statements regarding plaintiff's qualifications as a scientist, rather than the broader controversy over the carcinogenicity of malathion); *Silvester v. Am. Broadcasting Cos.*, 839 F.2d 1491, 1495 (11th Cir. 1988) (holding that the relevant public controversy was not the specific allegations of wrongdoing in a news report, but the broader issue of corruption in the jai alai industry). This approach aligns precisely with the Supreme Court's analysis in *Gertz*.

In sum, Plaintiff clearly qualifies as a public figure: an important public controversy preceded the Article—indeed, one of the most hotly debated and consequential controversies of our time. And Plaintiff voluntarily thrust herself into it—going so far as to help shape policy around the issue in multiple States. Plaintiff's argument to the contrary is frivolous.

    2.    <u>Kelly Has Not Pled and Cannot Plead Actual Malice</u>

As a limited purpose public figure, Kelly must plead facts that plausibly show by clear and convincing evidence that The Daily Beast published the Article with actual malice. This means Defendants must have published the Article *knowing* defamatory statements within it were false or *entertaining serious subjective doubts* about the truth of those defamatory statements. The Complaint does not and cannot plead such facts.

In support of her claim of actual malice, Plaintiff raises four arguments. (*See* Response, ECF No. 12 at PageID.421-423.) Each of them fails.

First, Plaintiff contends that The Daily Beast knew the Article was false because a purported expert witness on these issues provided Ms. Campbell with radio show presentations

that he has done and that apparently align with Kelly's viewpoint, but the Article did not refer to them. Far from proving actual malice, the email quoted by Kelly shows that this individual recognizes the subject matter as one on which people can and do hold different opinions: "I believe my presentation is an accurate reflection of the science," he says, "but I am open to comments and criticism." (*See* Response, ECF No. 12 at PageID.422.)

Second, Plaintiff contends that The Daily Beast has a long history of attacking those who oppose masking. Even if this were true, and even if that history could somehow be extrapolated into the thinking of Ms. Campbell and onto the Article at issue here, Plaintiff concedes that under the law such an attitude does not amount to actual malice. (*See id.*) Indeed, the Supreme Court has expressly declared that actual malice differs from exactly the sorts of things Plaintiff avers in this case: ill will, spite, animosity, and the like. (*See* Motion § IV(F), ECF No. 7 at PageID.172-176.)

Third, Plaintiff claims that The Daily Beast exhibited actual malice by referring to an unnamed source regarding the withdrawal of Plaintiff's affidavit. (*See* Response, ECF No. 12 at PageID.422.) In support of this argument, Plaintiff cites a passage in *St. Amant* where the Supreme Court discusses a hypothetical reporter who publishes a statement based on information that was provided anonymously and that was obviously suspect. (*Id.* (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)).) This case is entirely different.

The Article cites an unnamed source from a named organization as indicating that the affidavit was removed because it included errors. Plaintiff does not, and cannot, contest that her affidavit made incorrect statements, particularly about the findings of certain studies. Indeed, as the Article indicates, Plaintiff went so far as to provide The Daily Beast with *other* studies that she contends support her position. In other words, far from showing knowledge of falsity, the critical part of the information provided by the unnamed source was true: Plaintiff filed an affidavit that

12

included false statements.

Finally, Plaintiff claims that The Daily Beast's refusal to retract the Article shows that it published with actual malice. The Daily Beast has been unable to locate any demand for retraction, and none is attached to the Complaint. We assume, for the sake of argument, that Plaintiff made one.

Because actual malice relates to the defendant's state of mind at the time of publication, it would be the rare case indeed where a refusal to retract would have any probative value on this issue. The language of the Restatement ("might be relevant") cited by Plaintiff signals as much.[7] This is not such a case. For the reasons discussed above, there was nothing to retract.

A final point about actual malice: It is particularly difficult for a defamation plaintiff to successfully plead actual malice in a case like this one, where disagreements exist, the circumstances bristle with ambiguities, and the publisher reports both sides. *See*, *e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) ("[W]here the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of actual malice."), and the *Pape* and *Bose* cases discussed in the Motion. Plaintiff responds to those aspects of the Article by ignoring them.

Plaintiff has failed to plead a single fact that plausibly suggests by clear and convincing evidence that The Daily Beast knew anything in the Article was false or entertained serious doubts about the truth of anything stated there. The Complaint should be dismissed.

### F.  **The Emotional Distress Claim Fails**

Plaintiff misunderstands the holding of *Snyder* that matters here. As Plaintiff notes, the

---

[7] This Restatement provision is also the sole authority cited by the *Golden Bear* case on which Plaintiff relies.

standard under an intentional infliction of emotional distress claim is "outrageousness." In *Snyder*, and in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), before it, the Supreme Court held that this is too vague and subjective a standard to apply to speech on matters of public concern. This count of the Complaint is therefore also subject to dismissal as a matter of law.

### III. CONCLUSION

For all of the reasons set forth above and in the Motion, The Daily Beast respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

                        Respectfully submitted,

                        HONIGMAN LLP
                        *Attorneys for Defendants The Daily Beast Company LLC and Larrison Campbell*

                        By: */s/ Andrew M. Pauwels*
                        J. Michael Huget (P39150)
                        Leonard M. Niehoff (P36695)
                        Andrew M. Pauwels (P79167)
                        Honigman LLP
                        315 East Eisenhower Parkway Suite 100
                        Ann Arbor, MI 48108-3330
                        (734) 418-4254
                        mhuget@honigman.com
                        lniehoff@honigman.com
                        apauwels@honigman.com

Dated: July 19, 2022

44533188.3

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.3(b)(ii)

Pursuant to Local Rule 7.3(c), Counsel for Defendants The Daily Beast Company LLC and Larrison Campbell certifies that this brief contains 4,149 words, as indicated by Microsoft Word 2016, inclusive of any headings, footnotes, citations, and quotations, and exclusive of the caption, cover sheets, tables of contents, signature block, any certificate, and any accompanying documents.

Dated: July 19, 2022                                            */s/ Andrew M. Pauwels*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

Dated: July 19, 2022                                              */s/ Andrew M. Pauwels*